UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

MORRIS RUCKER,

    Plaintiff,

v.

CHERRY LINDAMOOD, et al.

    Defendants.

Case No. 1:16-cv-00090

Chief Judge Crenshaw
Magistrate Judge Newbern

## MEMORANDUM AND ORDER

Pending before the Court in this prisoner civil rights action are four discovery-related motions filed by Plaintiff Morris Rucker (Doc. Nos. 57, 58, 61, 104), as well as one filed by Defendant Vanessa McClain (Doc. No. 50). For the reasons that follow, Rucker's motions to subpoena or compel production of documents (Doc. Nos. 57, 58, and 61) are FOUND MOOT, and the motions to compel of Rucker (Doc. No. 104) and McClain (Doc. No. 50) are GRANTED IN PART and DENIED IN PART.

**I.**     **Background**

On October 24, 2016, Plaintiff Rucker, a Tennessee Department of Corrections (TDOC) prisoner proceeding pro se and *in forma pauperis*, filed this action under 42 U.S.C. § 1983 alleging civil rights violations by his health care providers at the South Central Correctional Facility (SCCF) in Clifton, Tennessee. After the Court's initial screening of Rucker's complaint under the Prison Litigation Reform Act, the only claims allowed to proceed were Rucker's claims of deliberate indifference to his serious medical needs in violation of the Eighth Amendment against Corizon Health, Inc., and Amy Franks, and his claims of retaliation and racial discrimination

against McClain. (Doc. No. 3.) Rucker subsequently amended his complaint to add Chris May as a party (Doc. No. 7), and his Eighth Amendment claim against May survived initial screening based on the allegation that May and McClain denied him necessary medical treatment on one occasion. (Doc. No. 63, PageID# 465.)

Defendants McClain, Franks,[1] and May are or were members of the medical staff at SCCF who Rucker claims were responsible for the denial of adequate treatment of his chronic obstructive pulmonary disease and asthma. He claims that his treatment was inadequate because he was given less-effective inhaler medications at SCCF than what he had been prescribed by a specialist and because he was not given a breathing treatment unless his oxygen level fell below a certain point. He further claims that this denial of adequate medical care is due, at least in part, to discrimination on the basis of his race. (Doc. No. 66, PageID# 476.)

## II. Analysis

### A. Rucker's Early Discovery Motions

Rucker filed his first three discovery motions before the addition of May as a party and sought from McClain (who was the only served defendant at the time) the same production in each motion. His Motion for Subpoena Du[c]es Tecum Production of Medical Records and Documents (Doc. No. 57) seeks production that he also asks the Court to compel in his Motion to Compel Discovery (Doc. No. 58). He then filed another motion to subpoena medical records and documents (Doc. No. 61) that is identical to the first. All three filings were made in the span of three days, September 8–11, 2017, and all sought to have the Court order the production of Rucker's medical records and associated documents, despite the fact that the time in which

---

[1] Rucker has not been able to locate Nurse Franks in order to direct service of process upon her. This issue will be addressed by separate order.

2

McClain could produce such documents had not yet passed. (Doc. No. 68, PageID# 640 ("On September 11, 2017, Defendant received the first set of 'Requests for Production' from Plaintiff that she has received in this entire case. Defendant is currently in the process of responding to said discovery requests.").)

Rucker's first three motions sought the production of pertinent medical records, grievances, logbook entries, policies, and investigative documents in SCCF's possession. McClain and May have produced documents responsive to Rucker's requests. Rucker's fourth discovery motion— his second Motion to Compel Discovery (Doc. No. 104)—challenges the sufficiency of that production. Accordingly, Rucker's motions to subpoena or compel production of these documents (Doc. Nos. 57, 58, and 61) are FOUND MOOT.

B. **Rucker's Motion to Compel Discovery (Doc. No. 104)**

The Court now turns to Rucker's motion addressing the sufficiency of McClain and May's production (Doc. No. 104). That motion is supported by a brief (Doc. No. 105) and Rucker's affidavit (Doc. No. 106), which attaches all of his written discovery requests and Defendants' responses. Defendants McClain and May have responded in opposition to Rucker's motion (Doc. No. 110), and Rucker has filed a reply to their response (Doc. No. 117).

As a preliminary matter, Rucker characterizes Defendants' discovery responses as "belated" and argues that their objections should be deemed waived based on their untimeliness. (Doc. No. 105, PageID# 1055–56.) "As a general rule, failure to object to discovery requests within the thirty days provided by Rules 33 and 34 constitutes a waiver of any objection." *Baker v. Cty. of Missaukee*, No. 1:09-CV-1059, 2013 WL 5786899, at *18 (W.D. Mich. Oct. 28, 2013). However, Rules 33 and 34 require a response within 30 days "after being served," Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A), not after the requests are mailed. The Court finds only one set of discovery

requests that could raise a possible timeliness issue: the requests for production of documents "given to the [SCCF] prison mailroom authorities" on September 7, 2017 (Doc. No. 106, PageID# 1074), to which Defendants responded by mail on October 10, 2017 (*id.* at PageID# 1080). Allowing three additional days for Defendant's response due to Rucker's service of his requests by mail, Fed. R. Civ. P. 6(d), and without knowing whether the requests were in fact mailed on the day that they were given to prison mailroom authorities, there is insufficient evidence that Defendants' responses were untimely. Therefore, there is no waiver of their objections to the requested production.

Rucker takes issue with Defendants' objections to his discovery requests and with the limited production they made without waiving those objections. Rucker's position with respect to the objected-to information is summarized in paragraph 23 of his affidavit in support of his motion to compel (Doc. No. 106, PageID# 1069, ¶ 23), and in his supporting brief (Doc. No. 105, PageID# 1056–57). Consistent with these descriptions, Defendants have addressed Rucker's discovery requests under eight categories (Doc. No. 110, PageID# 1158–1164), and Rucker replied to their arguments in the same framework (Doc. No. 117, PageID# 1193–1202).

Seven of the eight disputed categories involve requests for production. Under Rule 34, a party may request "any designated documents or electronically stored information—including . . . images, and other data or data compilations"—that are "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1).

1. **The PELCO Footage**

Rucker has requested a copy of the PELCO video footage from April 28, 2016, which he asserts will show that he "fel[l] out and was laying on the ground in front of medical and inside of medical on the waiting room floor having an 'asthmatic attack' . . . for a long period of time without

4

any medical care, until Nurse Kelly Mills, LPN . . . help[ed] the Plaintiff[]." (Doc. No. 117, PageID# 1193.) He seeks this footage to rebut McClain's assertion that he did not "fall out," but "intentionally laid on the floor in front of the medical department because he was 'mad' at the medical department," and that he received appropriate medical care on that occasion. (Doc. No. 106, PageID# 1097, ¶ 5.) Defendants have responded to this request by repeatedly asserting that "no such video footage exists because any such video footage was looped over long before Plaintiff even filed a lawsuit." (Doc. No. 110, PageID# 1158.) Rucker insists that this is not true because recording over such footage would be a violation of policy and protocol that requires any video footage recorded when a code is called for an emergency to be preserved "in archive for future viewing of [the] incident." (Doc. No. 117, PageID# 1193–94.)

Whether or not policy and protocol were violated, Defendants have been consistent in claiming that they do not possess the requested video footage of the medical department of SCCF on April 28, 2016. (Doc. No. 106, PageID# 1079, ¶ 7; PageID# 1117, ¶ 3; PageID# 1120; PageID# 1140, ¶ 4.) "When responding to discovery requests, a party must only produce items in its "possession, custody, or control[.]" *Allison v. Mavic, Inc.*, No. 5:13-CV-180-DCR-REW, 2014 WL 12650099, at *2 (E.D. Ky. Oct. 30, 2014) (quoting Fed. R. Civ. P. 34(a)(1)). Although Rucker does not believe that the video has actually been "looped over" or destroyed instead of being archived, the Court cannot compel Defendants to produce "items that it does not have or that do not exist." *Id.* at *3; *Cardenas v. Dorel Juvenile Grp., Inc.*, 230 F.R.D. 611, 620 (D. Kan. 2005). Accordingly, Rucker's motion to compel the production of this video footage is DENIED.

### 2. TDOC Medical Policies

Rucker has requested "[a]ll TDOC medical policies, post orders and memo[s] concerning medications, medical treatment and medical issues." (Doc. No. 106, PageID# 1139, ¶ 1.) Rucker

has also requested "[a]ll TDOC medical policies concerning any medical issues" (*id.* at PageID# 1117, ¶ 1) and "all medical policies, directives, or instructions to staff concerning medical treatments by [SCCF]" (*id.* at PageID# 1078, ¶ 2). Defendants object to what they see as an overly broad request for "all TDOC medical policies" and a vague description of the requested memos. (Doc. No. 110, PageID# 1159.) They also object that producing all post orders that have some provision related to medical issues would be unduly burdensome, and would require the production of confidential information to the extent that such orders also describe job duties of SCCF staff that relate to the safety and security of the prison. (*Id.*) However, Rucker clarifies in his reply brief that he is only seeking post order and memos concerning *his* medications and medical care, acknowledging that documents reflecting security procedures and other inmates' medical information would be irrelevant. (Doc. No. 117, PageID# 1195–96.) Defendants have already produced Rucker's medical records. (Doc. No. 110, PageID# 1162; Doc. No. 117, PageID# 1198.) To the extent that this production did not include "post orders" or "memos" that concern the provision of Rucker's medications and medical care, the Court ORDERS Defendants to produce any such documents, with information concerning other inmates, security protocols, or other confidential information appropriately redacted.

Defendants have responded to the request for TDOC medical policies by stating that has access to SCCF medical policies in the SCCF library. (Doc. No. 106, PageID# 1139, ¶ 1.) However, the availability of SCCF policies in the library does not adequately address Rucker's request for TDOC medical policies. Rucker notes that TDOC policies are not in fact available in the SCCF library. (Doc. No. 117, PageID# 1195.) In response to a different request for applicable sick call policies, Defendants produced TDOC Policy No. 113.31. (Doc. No. 106, PageID# 1078, ¶ 3.) The Court therefore believes it reasonable and not unduly burdensome for Defendants to

6

produce to Rucker the relevant TDOC policy or policies that address generally the provision of health care to inmates, for example, TDOC Policy # 113.30 (Access to Health Care). Rucker's motion to compel such production is GRANTED. The Court does not compel the production of more particularized medical policies that do not apply to the healthcare issues Rucker raises.

### 3. Sick Call Requests

Rucker requests production of "[a]ll sick call request sheets from September 13, 2016 to [present]." (Doc. No. 106, PageID# 1078, ¶ 4.) In response, Defendants state that they produced "all sick call requests that Plaintiff has submitted since September 13, 2016." (*Id.*) They object to providing Rucker the sick call requests of other inmates, citing confidentiality concerns and their lack of relevance to Rucker's claims. (*Id.*; Doc. No. 110, PageID# 1160.) Rucker clarifies in his reply brief that he does not seek other inmates' sick call requests, but claims that Defendants have only provided some, not all, of his sick call requests. (Doc. No. 117, PageID# 1196–97.) However, he does not specify which sick call requests he believes were withheld by Defendants. If Defendants have additional sick call requests from Rucker that have not been produced, they are ORDERED to supplement their discovery. Otherwise, Rucker's motion to compel this production is denied.

### 4. Inmate Grievances

Rucker requests production of all grievances filed by SCCF inmates "against the medical department for denied medications and medical treatment." (Doc. No. 106, PageID# 1140, ¶ 3.) Defendants object to this request on grounds that it is (1) unlimited in temporal scope, (2) unduly burdensome because "grievances are not filed by 'topic' and therefore SCCF cannot search grievances based upon the nature of complaints made . . . [but only] by the name of the inmate who filed the grievance," and (3) overly broad and irrelevant to the claims against these Defendants

7

to the extent it requests grievances filed by other inmates. (*Id.*) In their response brief, Defendants argue that any grievances of other inmates would likely contain confidential healthcare information protected from disclosure by the Health Insurance and Portability Accountability Act (HIPAA). (Doc. No. 110, PageID# 1161.) They further state that, in response to other discovery requests, they have provided Rucker with copies of the grievances he has filed at SCCF. (*Id.*)

Rucker has clarified in his reply brief that he seeks only grievances filed "around or about October 24, 2016, to the time [of] the Defendants['] response." (Doc. No. 117, PageID# 1197.) As to the objection that grievances are not filed by topic, Rucker states that "[t]his is not true, because the inmates['] grievances [are] filed by topic and on the computer by topic." (*Id.* (internal quotation marks omitted).) He "further states that the Grievance Chairperson Sgt. Staggs can look on the computer or in the files and will show the inmates['] grievances filed by topic." (*Id.*) Rucker also asserts that Defendants misstate the breadth of this request because "only around or about 10% of inmates has filed grievances against the medical department here at S.C.C.F." (*Id.*) Nevertheless, he asserts that production of this small percentage of grievances against the medical department would show that SCCF has "been denying medical care and medications to inmates as well as some inmates ha[ve] die[d], due to not receiving adequate medical care." (*Id.* at 1197–98.) He argues that the requested grievances may contain admissible character evidence under Federal Rule of Evidence 404(b). (Doc. No. 105, PageID# 1060.)

A motion to compel is not the right vehicle for Rucker to contest the factual accuracy of Defendants' response, *Grant v. Target Corp.*, No. 2:10-cv-823, 2013 WL 5366102, at *3 (S.D. Ohio Sept. 24, 2013), nor is this Court in position to resolve the dispute over how SCCF's grievance records are kept. In *Kowalski v. Stewart*, 220 F.R.D. 599 (D. Ariz. 2004), the court considered a motion to compel the production of thirteen years of prisoner grievances filed against

8

the named defendants, which the plaintiff argued was important character evidence relevant to his claim of denial of appropriate treatment for Hepatitis C. *Id.* at 601. The defendants opposed the motion by citing the unreasonable burden presented by the temporal scope of the request, the need to protect the confidentiality of the inmate grievants, and the fact that the grievances are organized in chronological order, not by name. *Id.* The court denied the prisoner's motion to compel, ruling that "photocopying, organizing, and taking adequate measures to ensure prisoner confidentiality for the previous thirteen years of prisoner complaints is unduly burdensome" and that the request exceeded the scope of the litigation because it sought documents "unrelated to Hepatitis C grievances." *Id.* at 602 (citing *Holestine v. Terhune*, No. C 99-5200 PJH (JL), 2003 WL 23281594 (N.D. Cal. Nov. 21, 2003)).

As in *Kowalski*, Defendants' objection here to the request for all grievances, whenever filed, against the medical department for denial of medications or medical treatment is well founded. Although Rucker states in his brief that the scope of his request would be appropriately limited to the time since October 24, 2016, searching for and producing other inmates' grievances that include complaints against anyone in the SCCF medical department related to denial of medications or other treatment and redacting confidential information would be overly burdensome and would yield information of limited relevance to Rucker's Eighth Amendment claim. Without redaction, such grievances would necessarily disclose information that directly or indirectly reveals the confidential medical concerns of nonparties. *See Callaham v. Mataloni*, No. 4:CV-06-1109, 2009 WL 1363368, at *3–4 (M.D. Pa. May 14, 2009) (denying motion to compel production of all inmate grievances concerning medical issues treated by defendants, sought for purposes of showing a pattern of mistreatment, because "the disclosure of these documents

containing details of [other inmates'] medical conditions necessarily would violate their rights to confidentiality"). Accordingly, the Court will not compel the requested production.

### 5. Tennessee Non-Formulary Medication Tracking Forms

Rucker has requested production of "[a]ll Tennessee Non-Formulary Medication Tracking [Forms], from [SCCF] and the approval and disapproval forms." (Doc. No. 106, PageID# 1140, ¶ 5.) Rucker further states that these forms were not contained in Defendants' production of his medical records, which only included forms from Riverbend Maximum Security Institution. (*Id.*) Defendants' response is not that such forms do not exist, but that they do not know what forms Rucker is referring to as "Non-Formulary Medication Tracking Forms"; they otherwise object to producing any information protected by HIPAA. (*Id.*; Doc. No. 110, PageID# 1162.)

However, in his reply brief, Rucker reaffirms that Defendants' prior production included all "Riverbend . . . Non-Formulary Medications Tracking Form[s], showing about his medications and medical condition." (Doc. No. 117, PageID# 1198.) He therefore questions the legitimacy of Defendants' claim that they do not know what forms Rucker is referring to when he requests such forms generated by SCCF, and their claim of potential HIPAA concerns. If such forms exist and are in Defendants' possession, custody, or control, they must be produced. Fed. R. Civ. P. 34(a)(1). Rucker's motion to compel such production is GRANTED.

### 6. Statement Given to HSA Paden

In his brief in support of the motion to compel, Rucker states that Defendants have refused to produce the "HSA Paden statement on April 28, 2016." (Doc. No. 105, PageID# 1060.) In their response, Defendants note that this request was not made until Rucker's most recent set of requests for production, which had been served on Defendants recently enough that their time to respond had not yet passed; they were reportedly "in the process of determining whether there is any such

10

statement." (Doc. No. 110, PageID# 1162.) Rucker's reply brief merely states that, as of the date of its filing, no "adequate answer" had been provided to this request. (Doc. No. 117, PageID# 1199.) This piece of the discovery dispute is not adequately developed for the Court to discern what production has been made, or the nature of any objection to production. As regards this "HSA Paden statement," the motion to compel is DENIED as premature.

### 7. Incident Report and Portions of Log Book

Rucker requests production of incident reports, code reports, and a copy of the log book on April 28, 2016, around or about 5:00 p.m., as well as the "Medical Department Officer and Unit C-B log book" from this date and time. (Doc. No. 106, PageID# 1140–41, ¶¶ 6–7.) Defendants objected to this request, and Rucker has now clarified that he "is seeking the log books page from April 28, 2016 from Central Control, Medical Department and the Unit C-B[,] showing a 'code' was called on that day, around or about 5:00 p.m., and th[at] Captain Cleek and several Correction Officers came to the Plaintiff's medical needs when the 'code' was call[ed]." (Doc. No. 117, PageID# 1200.) He further specifies that he is only seeking information relating to himself, reports "involving Plaintiff falling out and a[n] emergency code being call[ed]." (*Id.* at PageID# 1200–01.) He argues that if a code was called and not recorded in the log books or incident reports, the requested material would show that Defendants have violated protocol and TDOC policies which require such recordings. (*Id.*) Rucker also requests production of these TDOC policies, as well as post orders and memos concerning the calling of a code for an emergency. (Doc. No. 106, PageID# 1139, ¶ 2.) Defendants objected that it was "unclear what policies Plaintiff is requesting by referring to 'policies on emergency code,'" but referred him to the SCCF medical policies available in the SCCF library for any policies related to codes called in the event of a medical emergency. (*Id.* at PageID# 1139–40.)

11

Defendants assert that none of the medical logbooks indicate that a code was called on April 28, 2016, around 5:00 p.m. (Doc. No. 110, PageID# 1163.) Defendants were able to locate a logbook entry from that date and time that contained some information related to Rucker and produced that portion of the logbook to him with its contents otherwise redacted. (*Id.*) They assert that no incident reports or code reports "were ever created concerning any incident that occurred on April 28, 2016, involving Plaintiff[.]" (*Id.*) Rucker believes that "there should be several reports concerning this incident," and that Defendants should be compelled to produce records that demonstrate the lack of any such reports.

The Court finds that Defendants sufficiently responded to Rucker's requests for incident reports, code reports, and log book entries from the date in question related to an emergency involving him. If such documents do not exist, their production cannot be compelled. As to Rucker's request for TDOC policies concerning the calling of an emergency code, the Court again finds Defendants' reference to the SCCF library copy of SCCF policies to be an insufficient response. The Court finds it reasonable and not unduly burdensome for Defendants to produce to Rucker the relevant TDOC policy or policies that address the documentation required for such incidents, e.g., TDOC Policy # 103.02 (Incident Reporting). Rucker's motion to compel that production is GRANTED.

### 8. Request for Admission No. 5

Rucker seeks to compel an "adequate" response to his fifth request for admission, in which he asked Defendant McClain to admit that he "fel[l] out in front of medical department on April 28, 2016." (Doc. No. 106, PageID# 1097, ¶ 5.) McClain denied the truth of this statement, and asserted that Rucker "intentionally laid on the floor in front of the medical department because he was 'mad' at the medical department." (*Id.*) Rucker asserts that this response is false, pointing out

that it conflicts with McClain's more recent discovery responses, wherein she stated that she "worked on April 28, 2016, but did not see Plaintiff on that day." (Doc. No. 117, PageID# 1202.)

However, McClain's more recent response and the interrogatory that prompted it are not in the record; the response was not served until January 4, 2018, according to Rucker. (*Id.*) Moreover, among other possible explanations for what Rucker perceives as a contradiction, it cannot be determined from Rucker's quotation of McClain's response whether McClain intended to state that she did not see Rucker *as a patient* on the day in question, or at all. In any event, Rucker's "disagreement with defendant's response is not a foundation for granting a motion to compel." *Baker*, 2013 WL 5786899, at *4. McClain answered the request for admission. Rucker's motion to compel a different response does not present a proper discovery dispute for the Court to adjudicate.

## C. McClain's Motion to Compel (Doc. No. 50)

McClain claims that Rucker's responses to her first set of interrogatories and requests for production of documents were both untimely and roundly inadequate or unresponsive to the requests, and therefore seeks to compel sufficient responses from him. (Doc. No. 51.)

McClain mailed her discovery requests to Rucker on February 20, 2017. (Doc. No. 50-1.) Having received no response to these requests by March 30, 2017, McClain mailed a letter demanding that Rucker respond. (Doc. No. 50-2.) Rucker evidently mailed his response on April 6, 2017. (Doc. No. 51, PageID# 372.) As previously mentioned, failure to object to discovery requests within thirty days after being served constitutes a waiver of any objection. *Baker*, 2013 WL 5786899, at *18; Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A). Accordingly, Rucker has waived his objection that interrogatories 7, 8, 10, 12, and 15 (Doc. No. 50-5, PageID# 362–64, 366), as well as request for production 3 (*id.* at PageID# 369), are overly broad.

13

Rucker's remaining objections to McClain's requests cite the fact that he had not at that point received his prison medical records from Defendants and could not respond without them. (Doc. No. 50-5.) Rucker has now received production of those records. If Rucker has not already supplemented his discovery responses based on those records, he is hereby ORDERED to do so.

McClain next complains that Rucker "has refused to fill out a HIPAA form allowing Defendants to obtain his medical records from outside providers, even though a form has been provided to him with written discovery." (Doc. No. 51, PageID# 377; Doc. No. 50-5, PageID# 369, ¶ 6.) Rucker attaches to his response to the motion to compel an April 27, 2017 letter to defense counsel, in which he indicates that he is "not going to sign the authorize health information" because he will not agree to pay the cost for copying his medical records in the absence of a Court ruling. (Doc. No. 56, PageID# 409.)

It is clear "that a purpose of HIPAA was that health information, that may eventually be used in litigation or court proceedings, should be made available during the discovery phase." *Bayne v. Provost*, 359 F. Supp. 2d 234, 237 (N.D.N.Y. 2005) (citing 45 C.F.R. § 164.512(e)(1)(ii)). In the litigation context, HIPAA regulations allow Defendants to seek Rucker's outside medical records with or without his waiver of the statute's confidentiality protections. 45 C.F.R. § 164.512(e); *see, e.g., Sherlock v. Fontainebleau*, 229 F. Supp. 3d 1277, 1282–83 (S.D. Fla. 2017) (noting that "[i]f a party refuses to sign a release for discoverable medical records, a requesting party must comply with the procedures set forth in [HIPAA] and implementing regulations"). However, "obtaining a party's written consent for the release of medical records represents the least expensive and most efficient means of procuring information from medical or counseling providers." *Sherlock*, 229 F. Supp. 3d at 1282 (quoting *E.E.O.C. v. Sheffield Fin. LLC*, No. 1:06CV00889, 2007 WL 1726560, at *6 (M.D.N.C. June 13, 2007)). Here, it is clear that Rucker

14

has placed the severity of his medical condition at issue and reasonably proximate records concerning treatment of that condition are therefore relevant and discoverable. Even so, the crux of his Eighth Amendment claim concerns the treatment recommendations of a physician whose records Defendants already possess (Doc. No. 117, PageID# 1207–10), and the adherence to those recommendations by prison medical providers whose records Defendants already possess.

Defendants do not indicate that they intend to charge Rucker for the copying of any medical records they seek, and parties generally bear the costs of their own discovery. If Defendants intend to impose any costs on Rucker for this copying, they shall notify the Court within seven days of the date of this order. Otherwise, Defendants shall serve a new authorization form on Rucker for his signature with the assurance that he will not be charged any copying costs.

Lastly, McClain seeks to compel responses to three discovery requests that do not necessarily pertain to Rucker's Eighth Amendment claim: interrogatories 13, 15, and 17. Interrogatories 15 and 17, respectively, ask for Rucker to specify any and all facts and documents upon which he plans to rely to show that Defendants violated his rights, and the substance of any and all conversations he had with Defendants, SCCF employees or representatives, and/or CoreCivic concerning the allegations of his complaint. (Doc. No. 50-5, PageID# 366–67.) Rucker's responses to both interrogatories cite his need for his medical records before responding. (*Id.*) Because Rucker now possesses those records, he is ORDERED to make a complete response to interrogatories 15 and 17.

Interrogatory 13 asks Rucker to specify each and every fact that he will rely upon to show that Defendants racially discriminated against him, as he alleges in his complaint. (*Id.* at PageID# 365.) Without objecting, Rucker responded by stating that "[t]hey started discriminating against me from approx. 4-month thru 5-month 2017 and continue as of today[.] Records will show this.

Plus cameras." (*Id.*) The Court agrees with Defendants that this response is inadequate. Rucker is therefore ORDERED to make a complete response to interrogatory 13, specifying the facts that he intends to offer to support his claim of racial discrimination.

### D. Expenses Incurred in Preparing the Motions to Compel

When the Court grants a motion to compel, Federal Rule of Civil Procedure 37(a)(5) generally requires the Court to order the payment of reasonable expenses incurred in making the motion, including attorney's fees, by the party whose production was compelled. Fed. R. Civ. P. 37(a)(5)(A). However, if the motion to compel is granted in part and denied in part, as is the case with both parties' motions here, the award of reasonable expenses is not mandatory; rather, Rule 37(a)(5)(C) provides that "the court may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion[s]." *See also Univ. Settlements v. Nat'l Viatical, Inc.*, No. 1:07-CV-1243, 2009 WL 2143581, at *1 (W.D. Mich. July 15, 2009). In such cases, it is within the Court's discretion to require each party to bear its own expenses. *Id.*

Accordingly, all parties will bear their own expenses in preparing their motions to compel, including attorneys' fees.

### III. Conclusion

In sum, Rucker's motions to subpoena or compel production of documents (Doc. Nos. 57, 58, and 61) are FOUND MOOT. The motions to compel of Rucker (Doc. No. 104) and McClain (Doc. No. 50) are GRANTED IN PART and DENIED IN PART as described herein.

It is so ORDERED.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge