UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

MORRIS RUCKER,

    Plaintiff,

v.

CHERRY LINDAMOOD et al.,

    Defendants.

Case No. 1:16-cv-00090

Judge William L. Campbell, Jr.
Magistrate Judge Alistair E. Newbern

## MEMORANDUM ORDER

Pro se Plaintiff Morris Rucker, who is incarcerated and proceeding *in forma pauperis*, has filed a motion for service on Defendant Rachel Westray (Doc. No. 250) and a motion to issue a fourth summons to Westray (Doc. No. 262). Defendants Nurse Practitioner Amy Franks, Dr. Yvonne Neau, and CoreCivic, Inc. CEO Damon Hininger have filed a response in opposition to Rucker's motion for a fourth summons. (Doc. No. 263.) For the reasons that follow, Rucker's motions will be denied.

**I.    Relevant Background**

Westray formerly worked as a nurse at the South Central Correctional Facility (SCCF), a Tennessee detention facility operated by CoreCivic where Rucker was incarcerated. (Doc. No. 160.) The Court found after screening Rucker's amended complaint under 28 U.S.C. § 1915A that Rucker had stated a plausible claim that Westray intentionally discriminated against him based on his race in violation of the Equal Protection Clause of the Fourteenth Amendment. (Doc. Nos. 196, 199.)

Rucker returned a completed service packet for Westray as ordered by the Court (Doc. No. 159), and the Court issued a summons addressed to Westray on July 18, 2018 (Doc. No. 164).

Because Rucker proceeds *in forma pauperis*, the Court directed the U.S. Marshals Service to effect service of process on Westray as required by Federal Rule of Civil Procedure 4(c)(3). *See* Fed. R. Civ. P. 4(c). The Marshals Service has attempted to effect service on Westray using three different summonses at three different addresses: first at SCCF, the address Rucker provided for Westray in his completed service packet (Doc. No. 175); second, at Westray's last known home address, which CoreCivic provided to the Court under seal after the Court granted Rucker's first motion to subpoena Westray's address (Doc. No. 208); and finally at a publicly available address that the Court found in public records (Doc. No. 213). Each service attempt was unsuccessful.

On January 21, 2020, the Court denied Rucker's second motion to subpoena Westray's last known address, explaining that "CoreCivic ha[d] already complied with the Court's order to provide the last known address it has on file for Westray, . . .the Court and the Marshals Service ha[d] gone to great lengths to assist Rucker in serving process on Westray[,]" and "[t]here [was] nothing more that the Court c[ould] do at this juncture." (Doc. No. 225, PageID# 2009.)

On December 14, 2020, the Court received Rucker's motion for service on Westray. (Doc. No. 250.) Rucker states that his family used Facebook to find three possible addresses for Westray, one in Bethel Springs, Tennessee, and two in Jackson, Tennessee. (*Id.*) Rucker requests that the Marshals Service attempt to effect service of process on Westray at all three addresses. (*Id.*) On January 25, 2021, the Court received Rucker's motion to issue another summons for Westray. (Doc. No. 262.) Rucker's motion provides a fourth possible address for Westray in Dresden, Tennessee. (*Id.*)

Defendants Franks, Neau, and Hininger responded in opposition to Rucker's motion to issue another summons for Westray, arguing that Rucker has not shown good cause for the Court to extend the time period for effecting service of process under Rule 4(m). (Doc. No. 263.) Rucker

filed a reply arguing that the defendants "had clear knowledge as to where . . . Westray lived and her address, but failed to give it to the Court . . ." and that, in light of the difficulties posed by his incarceration, health problems, and the COVID-19 pandemic, Rucker "has just now found her address through" Facebook with his family's assistance.[1] (Doc. No. 268, PageID# 3018.)

**II. Analysis**

Federal Rule of Civil Procedure 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). The Court must extend the time for service upon a showing of good cause, and the Court may exercise its discretion to permit late service even where a plaintiff has not shown good cause. Fed. R. Civ. P. 4(m) advisory committee's note to 1993 amendment (explaining that Rule 4(m) "explicitly provides that the court shall allow additional time if there is good cause for the plaintiff's failure to effect service . . . and authorizes the court to [grant relief] . . . even if there is no good cause shown"); *see also Henderson v. United States*, 517 U.S. 654, 662–63 (1996); *DeVane v. Hannah*, No. 3:11-cv-00389, 2011 WL 5916433, at *2 (M.D. Tenn. Nov. 28, 2011). Otherwise, the language of Rule 4(m) mandates dismissal,

---

[1] Franks, Neau, and Hininger served their response in opposition on Rucker via U.S. mail on February 8, 2021. (Doc. No. 263.) Under this Court's Local Rule 7.01(a)(4) and Federal Rule of Civil Procedure 6(d), Rucker's reply was therefore due no later than February 18, 2021. *See* M.D. Tenn. R. 7.01(a)(4) (reply) ("An optional reply memorandum may be filed within seven (7) days after service of the response[.]"); Fed. R. Civ. P. 6(d) (adding three days to any time period based on service when service is made by mail). Rucker signed his reply on February 26, 2021. (Doc. No. 268.) His reply is therefore untimely under the relaxed standard governing filings by pro se incarcerated litigants. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that a pro se litigant's filing "is deemed filed when it is handed over to prison officials for mailing to the court" and "that, absent contrary evidence, a prisoner does so on the date he or she signed the [filing]"). The Court considers Rucker's untimely reply in light of the widespread delays in mail services during the COVID-19 pandemic and because doing so does not alter the Court's ultimate disposition of Rucker's motion.

either on motion or sua sponte. Fed. R. Civ. P. 4(m); *see also Byrd v. Stone*, 94 F.3d 217, 219 & n.3 (6th Cir. 1996).

When a plaintiff proceeds *in forma pauperis*, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." 28 U.S.C. § 1915(d). Rule 4(c) "dovetails" with § 1915, *Byrd*, 94 F.3d at 219, by providing that "[t]he court must" "order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court" "if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915 . . ." Fed. R. Civ. P. 4(c)(3).

> Together, Rule 4(c)[(3)] and 28 U.S.C. § 1915([d]) stand for the proposition that when a plaintiff is proceeding in forma pauperis the court is obligated to issue plaintiff's process to a United States Marshal who must in turn effectuate service upon the defendants, thereby relieving a plaintiff of the burden to serve process once reasonable steps have been taken to identify for the court the defendants named in the complaint.

*Byrd*, 94 F.3d at 219.

That does not mean, however, that an incarcerated pro se plaintiff proceeding *in forma pauperis* automatically shows good cause for extending the Rule 4(m) deadline when the Marshals Service has been unable to effect service of process on a defendant. Courts in this circuit consider the *in forma pauperis* plaintiff's conduct and the totality of the circumstances in determining whether good cause exists to extend the Rule 4(m) deadline. For example, in *Abel v. Harp*, 122 F. App'x 248, 252 (6th Cir. 2005), the Sixth Circuit considered the fact that the plaintiff diligently attempted to contact the Marshals Service "when he knew there was a problem with service on the defendants" and also considered the fact that "[t]he Marshals Service [incorrectly] advised [the plaintiff] that it had served all of the defendants" before holding that good cause existed to extend the Rule 4(m) deadline. *See also Byrd*, 94 F.3d at 220 (holding that good cause existed where "Marshals Service incorrectly informed plaintiff that it was taking care of the service of his

4

summons when, in fact, no summons was issued at all"). By contrast, in *VanDiver v. Martin*, 304 F. Supp. 2d 934, 941, 942 (E.D. Mich. 2004), the court found that a pro se incarcerated *in forma pauperis* plaintiff failed to show good cause to extend the Rule 4(m) deadline where the plaintiff "remained silent after being put on notice that . . . Defendants had not been served" at the address he provided because the defendants "no longer worked for the Michigan Department of Corrections." *See also Freeman v. Collins*, No. 2:08-cv-00071, 2011 WL 4914873, at *5 (S.D. Ohio Aug. 15, 2011) (finding that pro se incarcerated *in forma pauperis* plaintiff failed to show good cause to extend Rule 4(m) deadline where he "took no action to cure the lack of service for a significant period . . .").

Here, Rucker first provided the address of Westray's last known employment at SCCF, and the Clerk of Court issued a summons to Westray at that address. (Doc. No. 164.) The Marshals Service returned that summons unexecuted on August 20, 2018, with a notation that Westray was "no longer employed at SCCF." (Doc. No. 175.) Rucker moved to subpoena Westray's address. (Doc. No. 187.) After screening Rucker's amended complaint and finding that he had stated a colorable claim against Westray, the Court granted Rucker's motion to subpoena Westray's address and ordered "Hininger or an authorized representative of CoreCivic, Inc. or [SCCF] to file a notice under seal providing [Westray's] last known address . . . by April 17, 2019." (Doc. No. 200, PageID# 1833.)

The next day, CoreCivic filed a notice under seal with Westray's last known address from its human resources database. (Doc. No. 201.) The Court directed the Clerk of Court to reissue a sealed summons to Westray using that address and directed the Marshals Service to attempt service of the sealed summons. (Doc. No. 202.) The Marshals Service attempted to serve Westray at the sealed address by certified and restricted mail several times before attempting in-person service

and being informed by the property manager that Westray had moved and had not left a forwarding address. (Doc. No. 208.)

On August 28, 2019, the Court explained that, in light of the Marshals Service's "diligent-but-unsuccessful attempts at service, the Court [had] conducted a Lexis Comprehensive Person Report and found another potential home address for Westray." (Doc. No. 209, PageID# 1900.) The Court provided the address to the Clerk of Court under seal, directed the Clerk of Court to reissue a third summons to Westray, and directed the Marshals Service to attempt service at the third address. (Doc. Nos. 209, 210.) On September 19, 2019, the Marshals Service returned the third summons unexecuted after yet another unsuccessful attempt to serve Westray. (Doc. No. 213.)

On December 30, 2019, the Court received Rucker's second motion to subpoena Westray's address from CoreCivic, the Tennessee Department of Correction, or SCCF's warden. (Doc. No. 222.) The Court denied Rucker's motion, finding that "CoreCivic ha[d] already complied with the Court's order to provide the last known address it has on file for Westray, and the Court and the Marshals Service ha[d] gone to great lengths to assist Rucker in serving process on Westray." (Doc. No. 225, PageID# 2009.) The Court therefore notified Rucker that there was "nothing more that the Court c[ould] do at this juncture." (*Id.*)

More than ten months later, Rucker filed his pending motion for service on Westray and included three potential home addresses for Westray that he says his family found on Facebook. (Doc. No. 250.) Nearly two months after that, Rucker filed his pending motion for the Court to issue a fourth summons to Westray and included a fourth potential home address for Westray and a printout of pictures from her Facebook page. (Doc. No. 262.) Rucker argues in his reply that he submitted the addresses as soon as his family discovered them on Facebook (Doc. No. 268); that

6

Case 1:16-cv-00090   Document 295   Filed 09/13/21   Page 6 of 8 PageID #: 3633

his ongoing health problems and lock downs due to COVID-19 at the Northwest Correctional Complex, where he is currently incarcerated, have "put [him] behind in this cause of action" (*id.* at PageID# 3019, ¶ 4); and that the defendants' counsel knew where Westray lived and did not disclose her address to the Court (Doc. No. 268).

More than three years have passed since Rucker's amended complaint naming Westray was docketed. (Doc. No. 160.) This case has proceeded through summary judgment once (Doc. Nos. 264, 271) and a second round of summary judgment briefing is now pending (Doc. Nos. 273, 286, 290). Considering the totality of the circumstances, the Court finds that Rucker has not shown good cause to extend the Rule 4(m) deadline. The Marshals Service has attempted to serve Westray on Rucker's behalf numerous times using three different summonses and addresses. Rucker was initially an active participant in these efforts, but he waited more than ten months after the Court informed him that service attempts on Westray were ultimately unsuccessful to provide the Court with additional addresses where Westray might reside. As difficult as the COVID-19 pandemic has been, it does not explain Rucker's lengthy delay in asking his family to check a social media website. Moreover, while Rucker could not know this because the second and third summonses to Westray are sealed, the Marshals Service has already attempted to serve Westray at two of the four addresses included in Rucker's motions. Finally, Rucker has not pointed to any evidence to support his assertion that the defendants' counsel knows Westray's address and failed to disclose it to the Court.

**III.     Conclusion**

For these reasons, Rucker's motion for service on Westray (Doc. No. 250) and motion for a fourth summons to Westray (Doc. No. 262) are DENIED. The Magistrate Judge will recommend dismissal without prejudice of Rucker's claim against Westray under Rule 4(m) by separate report and recommendation.

It is so ORDERED.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge