# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## COLUMBIA DIVISION

| | | |
|---|---|---|
| **MORRIS RUCKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **NO. 1:16-cv-00090** |
| | ) | |
| **v.** | ) | **JUDGE CAMPBELL** |
| | ) | **MAGISTRATE JUDGE NEWBERN** |
| **CHERRY LINDAMOOD.,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

Pending before the Court is the second motion for summary judgment (Doc. No. 273) filed by Defendants Damon Hininger, Amy Franks, and Dr. Yvonne Neau.[1] Plaintiff, who is proceeding *pro se*, responded to the motion (Doc. Nos. 286, 287), and Defendants filed a Reply (Doc. No. 290). The Magistrate Judge issued a Report and Recommendation recommending the motion for summary judgment be denied. (Doc. No. 296). Defendants filed Objections to the Report and Recommendation. (Doc. No. 299).

## I.    BACKGROUND

The factual and procedural background is thoroughly detailed in the Magistrate Judge's Report and Recommendation and neither party objects to the Magistrate Judge's recitation of the facts. Accordingly, the Court adopts the background as stated in the Report and Recommendation.

---

[1]    The motion now before the Court is Defendants' second motion for summary judgment. The Magistrate Judge also recommended denying Defendants' first motion for summary judgment (Doc. No. 243). (Report and Recommendation, Doc. No. 264). Defendants objected that the Magistrate Judge "altered" Plaintiff's claims and that they did not have an adequate opportunity to address all of the allegations considered by the Magistrate Judge. The Court disagreed that the Report and Recommendation on the first motion for summary judgment "altered" the claims raised by Plaintiff, but allowed Defendants to file a second motion for summary judgment to address all of the allegations outlined in the Report. (Doc. No. 271). The Court denied the first motion for summary judgment without prejudice. (*Id.*).

(Doc. No. 296 at 2-17). The facts and procedural background are restated here only to the extent necessary to address Defendants' objections.

Plaintiff Morris Rucker brings claims under 42 U.S.C. § 1983, alleging violations of his Eighth Amendment right to adequate health care while he was confined at the South Central Correctional Facility ("SCCF"), a Tennessee detention facility operated by CoreCivic, Inc. ("CoreCivic"). Rucker initiated this case in October 2016. The initial complaint included claims under 42 U.S.C. § 1983 alleging deliberate indifference to his serious medical needs against several defendants, including Nurse Practitioner Amy Franks and Corizon Medical Services. (Doc. No. 1). Plaintiff amended or attempted to amend or supplement his complaint more than nine times. (Doc. Nos. 7, 18, 29, 34, 38, 47, 67, 118, 122, 142). On January 25, 2018, he sought leave to amend the complaint to name CoreCivic, CoreCivic CEO Damon Hininger, and Dr. Yvonne Neau as defendants stating that he learned their identities through discovery. (Doc. No. 122). Following the Magistrate Judge's order to file a single proposed amended pleading, Rucker filed what is now the operative complaint. (*See* Doc. Nos. 150, 160).

The claims in this case arise out of the medical treatment of Rucker while he was incarcerated at SCCF from approximately December 2015 to February 2018. (Doc. No. 285-1, ¶¶ 2, 94). Rucker suffers from chronic obstructive pulmonary disease (COPD) and asthma. (*Id*., ¶ 15; Doc. Nos. 243-4, 275, 285-1). He claims Defendants repeatedly discontinued necessary medication, often substituting less effective, less expensive alternatives, restricted access to necessary breathing treatments, and took an excessively long time to refill his prescription inhalers, at times leaving him without any inhalers. (Doc. No. 160).

Rucker alleges Franks disregarded serious risks to his health by discontinuing his prescription for Advair and instead prescribing a less effective alternative and by issuing an order

restricting his access to breathing treatments. (*Id*.). Neau, who was CoreCivic's regional medical director, was responsible for approving and denying specific medication requests. (Doc. No. 185-1, ¶¶ 11, 14). Rucker claims Neau disregarded serious risks to his health by repeatedly requiring and approving less effective medications to treat his COPD and asthma. (Doc. No. 160). Plaintiff alleges CoreCivic had a policy requiring approval of certain medications and a policy preference for less expensive medication, and that these policies resulted in SCCF medical providers regularly discontinuing his prescriptions for Spiriva and Advair and substituting different, less effective, less expensive alternatives, and, on at least one occasion, caused him to be without inhalers for three weeks. (*Id*.).

Defendants moved for summary judgment. They argued that: (1) Rucker failed to administratively exhaust most of his claims against Hininger, Franks, and Neau; (2) most of his claims against Hininger and some of his claims against Neau are barred by the statute of limitations; (3) Franks did not act with deliberate indifference when she prescribed Incruse Ellipta instead of Advair in April 2016; (4) Franks did not act with deliberate indifference when she ordered Rucker's breathing treatments restricted; (5) Neau did not act with deliberate indifference when she discontinued Rucker's Advair prescription in contravention of the pulmonary physicians orders and substituted a less effective alternative; (6) a CoreCivic policy or custom did not lead to a deprivation of Rucker's constitutional rights; and (7) Rucker cannot show Defendant's actions caused any "detrimental effect to his health."

The Magistrate Judge thoroughly considered the record evidence and each of the Defendants' grounds for summary judgment and recommended Defendants' motion for summary judgment be denied as to all claims. (Doc. No. 296). Defendants filed objections to the Report and

Recommendation stating objections to virtually all of the Magistrate Judge's findings. (Doc. No. 299).

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1) and Local Rule 72.03(b)(3), a district court reviews *de novo* any portion of a report and recommendation to which a specific objection is made. *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001). General or conclusory objections are insufficient. *See Zimmerman v. Cason*, 354 F. App'x 228, 230 (6th Cir. 2009); *Lea v. United States Dep't of Agric.*, 2018 WL 721381, at *1 (M.D. Tenn. Feb. 6, 2018) ("A general objection, or one that merely restates the arguments previously presented, does not sufficiently identify alleged errors on the part of the magistrate judge."). Thus, "only those specific objections to the magistrate's report made to the district court will be preserved for appellate review." *Id.* (quoting *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987)). Additionally, arguments not raised before the Magistrate Judge are not properly raised in an objection to a Report and Recommendation. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000). In conducting the review, the court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an

4

element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's claims. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper question of fact. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the trier of fact could reasonably find for the nonmoving party. *Rodgers* 344 F.3d at 595.

### III.    ANALYSIS

#### A.  Eighth Amendment Claims

"Section 1983 provides a civil enforcement mechanism for all inmates who suffer constitutional injuries at the hands of '[a]ny person acting under color of state law.'" *Ford v. Cty. of Grand Traverse*, 535 F.3d 483, 494 (6th Cir. 2008) (citing 42 U.S.C. § 1983). Rucker claims Franks, Neau, and Hininger were deliberately indifferent to his serious medical needs, which is a violation of the Eighth Amendment's prohibition on cruel and unusual punishment. *See North v. Cuyahoga Cty.*, 754 F. App'x 380, 384-85 (6th Cir. 2018); *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994).

5

Deliberate indifference has both objective and subjective components, requiring "proof that the inmate had a sufficiently serious medical need and that a municipal actor knew of and disregarded an excessive risk to the inmate's health or safety." *North*, 754 F. App'x at 385.

The objective component "requires that the inmate have a sufficiently serious medical need such that [he or she] is incarcerated under conditions posing a substantial risk of serious harm." *Id*. (citing *Ford v. Cty. of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008)). A medical need that has been diagnosed by a physician as "mandating treatment" is a sufficiently serious medical need. *Id*.

The subjective component requires that officials had a "sufficiently culpable state of mind" of "deliberate indifference to inmate health or safety." *Id*. (quoting *Farmer*, 511 U.S. at 834). Deliberate indifference requires more than negligence, something akin to reckless disregard; but it does not require proof that the officials intended to cause harm. *Id*. The plaintiff must "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded the risk." *Id*. "The subjective component is designed 'to prevent the constitutionalization of medical malpractice claims.'" *Winkler v. Madison Cty.*, 893 F.3d 877, 891 (6th Cir. 2018) (quoting *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014)). To show deliberate indifference, a plaintiff must allege "more than negligence or the misdiagnosis of an ailment." *Id*. (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)). "When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Id*.

**B. Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act ("PLRA"), a prisoner may not bring an action related to prison conditions, including medical care, until he has exhausted available administrative remedies. *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2016) (citing 42 U.S.C. § 1997e(a)). The Supreme Court has noted that "to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules' – rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007); *see also*, *Woodford v. Ngo*, 548 U.S. 81 (2006). The purpose of the exhaustion requirements is to "allow prison officials a 'fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010).

An inmate must make "affirmative efforts to comply with the administrative procedures" before the Court may consider whether those remedies were unavailable. *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 224 (6th Cir. 2011). When the inmate has done "something" in an effort to comply with administrative procedures, the Court will consider whether those "efforts to exhaust were sufficient under the circumstances." *Id.*; *see also*, *Wiley v. Ky. Dept. of Corr.*, No. 19-5368, 2020 WL 12933851, at * 2 (6th Cir. Aug. 25, 2020).

However, an inmate is required only to exhaust "available" administrative remedies. *Does 8-10 v. Snyder*, 945 F.3d 951, 962 (6th Cir. 2019) (citing *Ross v. Blake*, 578 U.S. 632, 642 (2016)). Administrative remedies may be considered "unavailable" if the grievance process operates as a simple dead end, is so opaque that it becomes, practically speaking, incapable of use, or "when

7

prison administrators thwart inmates from taking advantage of the grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644.

Failure to exhaust is an affirmative defense for which defendants bear the burden of proof. *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012). "[S]ummary judgment is appropriate only if [the defendant] establishes the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Troche v. Crabtree*, 814 F.3d 795, 798 (6th Cir. 2016). "Because the Defendants bear the burden of proof on exhaustion, they bear an 'initial summary judgment burden [that] is higher in that [they] must show that the record evidence contains evidence satisfying [their] burden of persuasion' and 'that no reasonable jury would be free to disbelieve it.'" *Does 8-10*, 945 F.3d at 961 (citing *Surles*, 678 F.3d at 455-56) (alteration in original)).

With this framework in mind, the Court considers the claims against the moving Defendants, beginning with Nurse Franks.

## C. Nurse Amy Franks

Rucker asserts a deliberate indifference claim against Franks based on two separate incidents. First Rucker claims that on April 28, 2016, Franks discontinued his prescription for Advair and instead prescribed Incruse Ellipta. Second, Rucker claims that although a physician recommended Rucker be given breathing treatments three times a day as needed, Franks issued an order limiting his access to breathing treatments.

Franks argues she is entitled to summary judgment on Rucker's claim because he cannot show deliberate indifference with regard to either the prescription of Incruse Ellipta instead of Advair or her instructions regarding breathing treatments. Franks also argues that Rucker failed to administratively exhaust the claims.

8

1. <u>Discontinuation of Advair on April 28, 2016</u>

The facts underlying Rucker's claim arising out of Franks' discontinuation of Advair are as follows. On December 22, 2015, shortly after Rucker arrived at SCCF, Franks reviewed Rucker's medical history as part of "medical intake screening." His medical records included a December 2014 non-formulary medication request by providers at the previous facility requesting approval for Spiriva and Advair which stated that the provider "tried to keep [him] on formulary meds but his condition is worsening / no improvement." (Doc. No. 260-6). Franks then renewed his prescriptions for "ProAir, Atrovent, Zyrtec, Spiriva, Advair, his rescue inhalers and his breathing treatment as needed … for 180 days." (Doc. Nos. 243-4; 243-5 at PageID# 2344 at ¶ 15).

SCCF medical providers followed a drug formulary, which is a list of medications that providers may prescribe without further approval. (Doc. No. 243-4, ¶ 11). Medications not on the formulary list – i.e., "non-formulary drugs" – required approval by CoreCivic's regional medical director, Dr. Yvonne Neau. (*Id*.). Plaintiff's prescriptions for Spiriva and Advair were non-formulary drugs. (Doc. Nos. 243-4, 260-6). It typically took 1-3 days for a prescription to be filled after the nurse submitted the order to an outside pharmacy. (Doc. No. 243-4, ¶ 9). Requests for non-formulary medication added one to two days to this timeline. (*Id*., ¶ 12).

On April 25, 2016, Plaintiff informed SCCF medical staff that he was running out of Advair. (Doc. No. 243-5, ¶ 18). Plaintiff reported that he had been taking double the prescribed amount to control his symptoms. (*Id*.). Franks requested approval to renew Plaintiff's prescription for Advair that same day. (*Id*.). Neau suggested prescribing Incruse Ellipta instead of Advair. (*Id*.). Per Neau's suggestion, Franks ordered Incruse Ellipta on April 28, 2016. (*Id*., ¶ 20). At the time, she did not know Incruse Ellipta was a non-formulary drug and did not submit a request for non-

formulary approval. (*Id.*, ¶ 21). Franks states that Incruse Ellipta is prescribed to elevate a COPD patient's care when current medication does not sufficiently address the patient's symptoms. (*Id.*, ¶ 19). She explains that she had no concerns about switching Rucker's medication to Incruse Ellipta to see if it would better manage his COPD. (*Id.*). On May 2, 2016, Franks learned that Incruse Ellipta was a non-formulary medication and requested Neau approve the prescription, which Neau did the same day. (*Id.* at ¶ 21).

The Magistrate Judge found there were questions of fact regarding whether Franks' prescription of Incruse Ellipta instead of Advair showed deliberate indifference to Rucker's serious medical needs. She noted that Rucker's medical records showed "that repeated attempts to treat Rucker with medications other than Advair and Spiriva resulted in Rucker's condition deteriorating." (Doc. No. 296 at 47 (citing Doc. No. 260-6)). She further found that because Franks initially thought Incruse Ellipta was formulary medication, "a reasonable jury could find that Franks's primary reason for changing Rucker's Advair prescription to Incruse Ellipta was because she thought it was formulary and that she disregarded a serious risk of harm to Rucker by prescribing him a less efficacious treatment despite her knowledge of his poor history on other medications." (*Id.*).

Respectfully, the Court disagrees with these findings. First, although Rucker's medical records from 2014 indicate that he did not respond well to Alvesco (*see* Doc. No. 260-6 at PageID# 289-91), there is no evidence that he had previously been prescribed Incruse Ellipta or that it would be ineffective to treat his condition. Moreover, Franks stated that because Rucker indicated that Advair was not alleviating his symptoms at the prescribed dose, she had no concerns about changing Rucker's prescription to Incruse Ellipta to see if it would more adequately treat his symptoms.

This case is distinguishable from *Darrah v. Krishner*, 865 F.3d 361 (6th Cir. 2017). In *Darrah*, the defendant discontinued a medication that had been successfully treating the inmate's condition and substituted a formulary medication without any medical reason. *Id*. at 372. Indeed, the "only apparent basis" for prescribing the formulary medication was that it was listed on the drug formulary (*i.e.*, less expensive). *Id*. In addition, the formulary drug prescribed in *Darrah* was considered a "drug of last resort" for treating the plaintiff's condition – the FDA warning label cautioned that the drug should be used to treat the plaintiff's condition only when all other medications have proven ineffective. *Id*. at 372. In addition, the formulary drug was an immunosuppressant that required the plaintiff to be monitored for side effects during its use. *Id*. On this record, the *Darrah* court held that a reasonable jury could find that the defendant disregarded a risk of serious harm by prescribing the less-effective formulary medication.

Here, even if Franks thought Incruse Ellipta was a formulary medication when she initially requested the prescription, there is no evidence to suggest that she changed the prescription *because* it was formulary. Unlike in *Darrah* where there was no medical reason to change the plaintiff's prescription, Franks provided medical justification for the change. Franks stated that Rucker complained of shortness of breath when he took his medication once a day as prescribed. Although she initially requested approval for Advair, she had no qualms with Neau's suggestion to try Incruse Ellipta to see if it would more adequately treat Rucker's symptoms. Although Rucker did not respond well to Incruse Ellipta, unlike in *Darrah* where the substituted drug was a "drug of last resort" with known side effects, there is no evidence that Incruse Ellipta is a less effective or categorically inferior treatment option. On the record before this Court, there is simply no evidence from which a reasonable jury could conclude that Franks acted with deliberate indifference when she prescribed Incruse Ellipta in April 2016.

11

As to the related issue of whether Franks knew Rucker would be without Advair during the approximately seven days it took for the new prescription to be approved, the Court agrees with the Magistrate Judge that there are questions of fact. Although Rucker does not dispute that he told Franks he was *running out* of Advair, not that he was *out*, given the length of the delay, there are questions of fact regarding whether Franks knew Rucker would be without his prescribed medication during this time. (Doc. No. 285, ¶ 23). Nevertheless, even construing the facts in the light most favorable to the Plaintiff, no reasonable jury could conclude that Franks acted with deliberate indifference in failing to fill his prescription more quickly. When Rucker told her that he was running out of Advair, Franks immediately requested a renewal, and then promptly acted upon Neau's suggestion to prescribe Incruse Ellipta instead. (*Id.*, ¶ 24). Unlike the plaintiff in *Darrah*, there is no indication Rucker went without any medication for months.

Accordingly, judgment will be granted in favor of Franks on the claim arising out of the prescription of Incruse Ellipta in April 2016. In light of this determination, the Court need not address Franks' argument regarding exhaustion of administrative remedies which pertain only to this aspect of the claim.

2. Restriction of Breathing Treatments

Franks also objects to the Magistrate Judge's determination that issues of material fact concerning whether she acted with deliberate indifference by restricting Rucker's access to breathing treatments preclude summary judgment on that aspect of his claim. (Doc. No. 299-1 at 8-9).

Rucker claims Franks' July 11, 2016 order limiting his breathing treatments to when his oxygen level went below 94% or he was symptomatic contravened Dr. Freemont's order that he be given breathing treatments "three times a day as needed" and was in deliberate disregard to a

12

serious risk of harm. Franks responds that her instructions did not contravene Dr. Freemont's order, but merely set forth when breathing treatments were "needed." (Doc. No. 274 at 19; Doc. No. 299-1 at 8). She believed providing a breathing treatment when Rucker was not symptomatic or presenting with low oxygen levels would have been detrimental to his health. (Doc. No. 299-1 at 8-9). Franks specifically objects that, in finding questions of fact on this issue, the Magistrate Judge relied upon evidence that Dr. Freemont later recommended Rucker be allowed to keep a nebulizer machine in his cell to more easily take three nebulizer treatments a day. (*Id.*). She argues that Freemont's later order, issued in 2019, has no bearing on whether Franks acted with deliberate indifference in 2016. (*Id.*). Finally, she contends that there is no evidence her order interrupted a course of treatment prescribed by Dr. Freemont because there is no evidence Rucker was denied breathing treatments when they were medically needed. (*Id.*).

The Court finds these objections without merit. There are questions of fact regarding whether Franks disregarded a serious risk of harm to Rucker's health by limiting his access to breathing treatments in contravention of Dr. Freemont's orders and whether a "needed" breathing treatment was denied based on Franks's instructions. Construing the evidence in the light most favorable to the Plaintiff, a breathing treatment was "needed" when Rucker was having trouble breathing. Dr. Freemont's subsequent orders are relevant to the question of what he intended when he ordered breathing treatments "three times a day as needed." Moreover, in finding questions of fact precluded summary judgment on this issue, the Magistrate Judge noted that Franks did not address Rucker's assertion that Franks told other nurses that he was faking shortness of breath and using too much medication. (Doc. No. 296 at 50). Franks' objections to the Report and Recommendation again ignore this evidence.

3. <u>Exhaustion of Administrative Remedies</u>

Franks also argues she is entitled to judgment because Rucker did not administratively exhaust his claim that she restricted access to breathing treatments. She argues that Rucker's November 10, 2016 grievance cannot be deemed to exhaust claims against her because she is not identified in the grievance and because the grievance was filed more than seven days after she issued the order and, therefore, untimely. (Doc. No. 274 at 8; Doc. No. 299-1 at 17).

Rucker filed a grievance November 10, 2016, complaining that Nurse Robinson denied him a breathing treatment because she said his "oxygen level was to[o] high" according to an "order" in his medical file. (Doc. No. 260-3 at PageID# 2837-40). In the grievance, Plaintiff stated that Nurse Robinson would not tell him who wrote the "order" and requested SCCF officials tell him who wrote the order and what the policy was regarding his breathing treatments. (*Id.*). A nurse responded to the grievance stating that Plaintiff's medical records showed that when he was denied a breathing treatment his oxygen saturation level was 98% and he was showing no signs of respiratory distress. (*Id.*). At each level of review, Plaintiff's November 16, 2016 grievance was deemed "inappropriate" because it was the same or similar to another grievance. (*Id.*).

The Magistrate Judge found Franks failed to carry her burden to show that summary judgment was warranted on exhaustion grounds because a reasonable jury could conclude that Franks' July 28, 2016 order is the order upon which Nurse Robinson relied and that Rucker timely filed the grievance because it was filed within seven days of the most recent application of Franks' order. (Doc. No. 296 at 29-30).

Franks' objections on this issue repeat her arguments made to the Magistrate Judge word for word. (*Compare* Doc. No. 274 at 8-9 *with* Doc. No. 299-1 at 17-18). Although she does not agree with the Magistrate Judge's conclusion, Franks does not identify any specific points of error

in the Magistrate Judge's analysis. Finding no error in the Magistrate Judge's analysis on this point, the objections are overruled.

**D. Dr. Yvonne Neau**

       1. <u>Medication Approval and Denial</u>

Rucker alleges Neau disregarded a serious risk to his health by repeatedly requiring and approving prescription medications that were less effective than Advair and Spiriva, which his medical records show were recommended by a specialist and were the only medications among several tried that controlled his condition. He specifically complains that in January 2018, Neau discontinued his prescription for Advair and Spiriva and prescribed the formulary drug AirDuo instead.

Neau argues that the facts do not support Rucker's claim because, when making formulary and non-formulary decisions, she did not consult his medical records and instead relied solely on information provided by the provider making the request, and because she repeatedly approved non-formulary requests and denied formulary requests only two times (both of which she contends "really should not count"). (Doc. No. 274 at 20; Doc. No. 299-1 at 10-11). Further, Neau argues that Rucker cannot show deliberate indifference because she was never made aware that Rucker was not receiving adequate medical care or that "specialist" orders required him to be on any specific medication, and that there is no evidence that she knew drugs other than Advair and Spiriva, particularly AirDuo would be ineffective. (*Id.*).

The Magistrate Judge concluded that a reasonable jury could conclude from the record evidence that Neau knew that Rucker needed Advair and Spiriva and that other medications had proven ineffective in treating his condition because she had been informed of this need on at least six separate occasions. (Doc. No. 296 at 52). The Magistrate Judge also found there were questions

of fact regarding whether Neau prescribed AirDuo (a formulary drug) in place of Advair and Spiriva (non-formulary drugs) in January 2018 solely because it was on the formulary list, particularly in the face of evidence that drugs other than Advair and Spiriva did not effectively treat his condition.

As explained above with regard to the claims against Franks, there is no evidence that Neau's recommendation to prescribe Incruse Ellipta instead of Advair in April 2016 was deliberately indifferent to Rucker's serious medical needs. (*See supra* III.C.1.). At that time, it appeared Rucker's treatment was not controlling his condition, and Neau stated she recommended Incruse Ellipta as an attempt to better treat his symptoms. (Doc. No. 243-6, ¶ 9). There is no evidence that he had previously been prescribed Incruse Ellipta or that it would be ineffective to treat his condition. Although the evidence shows that SCCF providers repeatedly informed Neau about Rucker's need for Advair and Spiriva, in April 2016 they had not yet done so. (*See* Doc. No. 296 at 52 (citing six times between May 2016 and January 2018 when Neau was informed Rucker needed Advair and Spiriva)).

However, the record also shows that after Neau was informed Rucker did not do well on Incruse Ellipta and that he needed Advair and Spiriva, she continued to require and approve prescription medications that were less effective than Advair and Spiriva, including approving Incruse Ellipta in January 2017 and substituting a formulary medication for Advair and Spiriva in January 2018.

Specifically with regard to the prescription of AirDuo in January 2018, Neau argues Rucker cannot show deliberate indifference because AirDuo is "essentially identical" to Advair. (Doc. No. 299-1 at 11). This argument is not well-taken. First, by referring to AirDuo as "essentially identical" and "virtually identical" to Advair, Neau effectively concedes that the two prescriptions

16

are not, in fact, identical. Given the evidence that Neau was aware that medications other than Advair and Spiriva had not been effective to treat Rucker's condition, and that she denied the request for those medications solely because of a preference for formulary medication, the Court agrees with the Magistrate Judge that there are questions of fact regarding whether she was deliberately indifferent to Rucker's serious medical needs by denying approval for Advair and Spiriva and prescribing AirDuo instead.

Even discounting the initial prescription of Incruse Ellipta in April 2016, the Magistrate Judge identified ample evidence from which a jury could conclude that Neau was aware that prescribing medications less effective than Advair and Spiriva presented a serious risk of harm to Rucker's health. (*See* Doc. No. 296 at 53-54). The Court agrees with the Magistrate Judge's conclusion that summary judgment is not appropriate on this claim.

2. Exhaustion of Administrative Remedies

Neau also objects to the Magistrate Judge's determination that there are questions of fact regarding whether Rucker exhausted administrative remedies as to his claims against her related to the prescription of Incruse Ellipta in April 2016 and January 2017. In light of the Court's determination that the claim regarding the prescription of Incruse Ellipta in April 2016 is not actionable, the Court does not consider whether Rucker exhausted available administrative remedies with regard to this claim.

With regard to the January 2017 incident, Rucker filed grievances on February 10, 2017, and February 24, 2017, complaining that Dietz replaced his Spiriva prescription with Incruse Ellipta. (Doc. No. 260-3). Neau argues that these grievances are insufficient because neither mentions her by name or complains about her actions. (Doc. No. 299-1 at 18). But Neau is undisputedly the person who approved Dietz's request to prescribe Incruse Ellipta. On this record,

17

the Magistrate Judge found Neau did not carry her burden to show no genuine issue of material fact that Rucker failed to exhaust his claims against her. The Court agrees with this determination.

**E. Hininger**

    1. <u>Municipal Policy</u>

Hininger is sued in his official capacity as CoreCivic CEO. Official capacity claims are treated as claims against the entity of which the officer is an agent. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). A private entity performing a government function "can be found liable under § 1983 … where the [entity] *itself* causes the constitutional violation at issue" through execution of its policies or customs. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. NYC Dep't of Soc. Servs*., 436 U.S. 658, 694-95 (1978)). The key inquiry is "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Id*. at 386. The plaintiff must "identify the policy, connect the policy to the [municipal entity] itself and show that the particular injury was incurred because of the execution of that policy." *Graham ex rel. Est. of Graham v. Cty. of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004) (quoting *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).

The Magistrate Judge found there were issues of fact concerning whether CoreCivic adopted a policy preference for formulary medications which led to violation of Rucker's constitutional rights. This finding was based on the undisputed facts that CoreCivic policy required advanced approval from the regional medical director to prescribe non-formulary drugs and that Rucker's prescriptions for Advair and Spiriva were non-formulary.

The Magistrate Judge also found that there is evidence to support a reasonable jury's finding that CoreCivic's policy preference for formulary medication caused SCCF providers to interrupt Rucker's Advair and Spiriva treatments. (Doc. No. 296 at 57). This finding was based on

18

three separate occasions in which SCCF providers interrupted his treatment with these non-formulary drugs to prescribe formulary drugs (or what they thought were formulary drugs). (*Id*. at 57-58). The first instance was in April 2016 when Franks prescribed Incruse Ellipta, thinking it was a formulary drug. As stated above with regard to the claim against Franks, there is insufficient evidence from which a jury could conclude that Franks prescribed Incruse Ellipta, which was, in fact, non-formulary, because of her mistaken belief that it was a formulary drug. (*See supra* III.C.1.). Accordingly, the Court will disregard this alleged application of the policy.

The next occurrence considered by the Magistrate Judge was that in February 2017 Nurse Kelley replaced Advair with the formulary drug Alvesco even though Rucker's medical records showed he could not tolerate the drug and it did not help his COPD and asthma. (*Id*. at 58 (citing Doc. No. 234-4, 260-6)). Finally, in January 2018, Neau denied approval for Advair and Spiriva and directed the nurse to prescribe AirDuo, a formulary option, instead. (Doc. No. 296 at 58 (citing Doc. No. 260-6)). The Magistrate Judge also found sufficient evidence from which a jury could find that Rucker suffered serious declines in his health on several occasions after SCCF providers applied CoreCivic's policy preference for formulary medications to deny and delay his treatment with Advair and Spiriva. (*Id*.).

Hininger argues that three instances of conduct are insufficient to create a question of fact with regard to the existence of a policy. This objection is without merit. Importantly, there are several ways to show a policy or custom: (1) legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; and (4) a custom of tolerance or acquiescence of federal rights violations. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). Hininger's arguments address only the fourth possibility and ignores that the finding of questions of fact with regard to the existence of a

policy is not based solely on these three instances in which Rucker's medications were substituted. It is based on the requirement to pre-approve non-formulary medications in the first instance. The fact that his prescriptions for Advair and/or Spiriva were discontinued on at least two occasions when doing so was not medically indicated is further evidence of the policy preference for formulary prescriptions. The Court agrees with the Magistrate Judge's finding that there are issues of fact concerning whether CoreCivic adopted a policy preference for formulary medications that ultimately led to a violation of Rucker's constitutional rights.

2. Exhaustion of Administrative Remedies

Hininger also objects to the Magistrate Judge's determination that Rucker exhausted administrate remedies. Rucker's January 2018 grievance complained that the "Corporate office ke[pt] forcing [Rucker] to use medications that are not for COPD and Asthma, to cut the money costs on the medications." (Doc. No. 260-3 at PageID# 2857). Hininger argues this does not adequately grieve the claims asserted here, which he asserts are specifically about a delay in receiving his medication, not provision of ineffective medication.

The Magistrate Judge found that Plaintiff's January 2018 grievance exhausted claims that Rucker "did not receive Advair and Spiriva (delaying effective treatment) because the "Corporate Office," through Neau, kept prescribing other medications to cut costs (a policy preference for particular medications)." (Doc. No. 296 at 25). "In other words, when Rucker was denied daily use of Advair and Spiriva because Neau did not renew his prescriptions based upon that policy, effective treatment of his COPD and asthma was necessarily delayed." (*Id*.).

As an initial matter, the Court notes that Hininger's objection does not address the Magistrate Judge's analysis. Instead, it merely restates word for word the argument presented in the summary judgment brief. (*Compare* Doc. No. 274 at 9-10 *with* Doc. No. 299-1 at 19).

Therefore, the Court need not consider the objection. *See VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004) ("A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge."); *Lea v. United States Dep't of Agric.*, 2018 WL 721381, at *1 (M.D. Tenn. Feb. 6, 2018) (same).

In any event, the attempt to draw a fine line between allegations of a delay in effective treatment because policy required approval for certain medications and denial of effective treatment because policy required approval for certain medications and that approval was denied, is not well taken. The grievance provides adequate notice of Rucker's complaint concerning the policy preference for formulary medications, which he alleges resulted in denial of effective treatment for his condition. Defendants' objection is essentially one of semantics and is overruled.

## F. Proof of Injury

Defendants object that the Magistrate Judge improperly found that Plaintiff need not show an injury to allege a constitutional violation. (Doc. No. 299-1 at 14). Defendants contend that to prevail on a claim regarding an alleged delay in treatment, Plaintiff must place verifying medical evidence in the record that establishes the detrimental effect of the delay. (*Id*. (citing *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) and *Dozier v. Pauley*, 24 F. App'x 398 (6th Cir. 2000))).

Defendants claim of error is unpersuasive. The Sixth Circuit has held that an inmate may state a claim based on delay in treatment even when there is no detrimental effect. *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). This is because "the test for deliberate indifference is whether there exists a '*substantial risk* of serious harm' and does not require actual harm to be suffered." *Id*. (citing *Farmer*, 511 U.S. at 837) (emphasis in original). The *Blackman*

21

court explained that a claim concerning delay in treatment may be premised on the detrimental effect of the delay, but may also be premised on the theory that "the delay alone in providing medical care creates a substantial risk of serious harm." *Id*. Rucker has submitted evidence in support of both theories.

## G. Statute of Limitations

Hininger and Neau argue that claims against them based on conduct that occurred before January 25, 2017, are barred by the one-year statute of limitations.[2] (Doc. No. 274 at 12-15). Hininger contends all of the claims against him are untimely. (*Id*. at 13). Neau concedes the claims related to conduct in January 2018 were filed within the limitations period, but argues "claims against her for alleged incidents that occurred in April 2016 and January 2017 … are clearly untimely." (*Id*. at 15).

In Tennessee, actions brought under 42 U.S.C. § 1983, must be brought within one year. *See Edison v. Tenn. Dep't of Children's Servs*., 510 F.3d 631, 634 (6th Cir. 2007) (citing Tenn. Code Ann. § 28-3-104). The limitations period generally begins to run when a plaintiff knows or has reason to know of the injury which is the basis for his action. *Id*. at 635. As applicable here, the statute of limitations is tolled by the filing of a proposed amended complaint to add defendants accompanied by a motion for leave to amend. *See e.g*., *Shillman v. United States*, 221 F.3d 1336, 2000 WL 923761 (6th Cir. 2000) (Table); *United States v. Katz*, 494 F. Supp. 2d 641, 644 (S.D. Ohio 2006). In addition, for claims subject to the PLRA's administrative exhaustion requirement,

---

[2] In the Motion for Summary Judgment (Doc. No. 274), Defendants assert that claims are barred to the extent they arose more than one year before June 25, 2018, the date Rucker filed the Amended Complaint naming Hininger and Neau as parties. However, their Objections appear to concede that the correct date is no later than January 25, 2018, which is the date Rucker mailed the motion for leave to amend and proposed amended complaint adding Hininger and Neau as defendants. (*See* Doc. No. 299-1).

22

the statute of limitations is tolled while the litigant exhausts his administrative remedies. *See Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012).

The statute of limitations is an affirmative defense for which defendants bear the burden of proof. *Surles*, 678 F.3d at 458. To prevail on this affirmative defense, defendants must show that the statute of limitations has run and that there is no genuine dispute of material fact as to when the plaintiff's cause of action accrued. *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001).

The Magistrate Judge recommended the Court find Defendants failed to carry their burden to show no genuine issue of material fact that the statute of limitations has run or as to when Plaintiff's claims accrued and deny Defendants' motion for summary judgment on statute of limitations grounds. (Doc. No. 296 at 33, 42). The Magistrate Judge considered three separate reasons under which the statute of limitations would not bar Plaintiff's claims arising out of injuries that incurred more than one year prior to the filing of the Amended Complaint – relation back under Federal Rule of Civil Procedure 15(c), the continuing violations doctrine, and tolling.

1. Claims against Hininger

Hininger argues the claims against CoreCivic are time-barred because the only allegation against CoreCivic in the Amended Complaint relates to conduct in July 2016 when Rucker alleges he was told it would "take up to 3 weeks [for his prescriptions to be filled] because CoreCivic Corporate Office had to approve to pay the cost for the refills." (*See* Doc. No. 274 at 13 (citing Doc. No. 160, ¶¶ 14-15)).

As an initial matter, the Court disagrees that Rucker's claims against CoreCivic are limited to the single allegation of delay in July 2016. Rucker also brings claims against CoreCivic based on the repeated denial and/or delay of his prescription medication due to the CoreCivic policy

requiring additional approval for certain medications and a policy preference for formulary medications. It is true, this claim is not artfully pleaded. However, *pro se* filings are to be liberally construed, and a *pro se* complaint, however inartfully pleaded, is held to a less stringent standard that a formal pleading drafted by lawyers. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999). The Amended Complaint specifically references the grievance filed against CoreCivic and Neau on January 15, 2018, "on the grounds of deliberate indifference to Plaintiff's serious medical needs, because Plaintiff's 'Advair and Spiriva inhalers [were] discontinued by Dr. Neau CoreCivic Corporate Doctor.'" (Compl., Doc. No. 160, ¶ 22). Though this allegation is not explained at length in the Amended Complaint, the January 15, 2018 Grievance, which is incorporated by reference, more clearly explains that Rucker complains that "Dr. Neau have changed my medications six (6) times within the last year, placing my life in danger; All because Corporate Office keep forcing me to use medications that are not for COPD and Asthma, to cut the money costs on the medications." (*See* Doc. No. 160-3). The grievance explains that the latest medication change was on January 14, 2018. (*Id*.). Accordingly, Plaintiff's claims against CoreCivic extend through at least January 2018. Even by the least generous of Defendant's proposed dates, June 25, 2018, his claims are not entirely barred by the one-year statute of limitations.

Rucker argues that even claims arising out of events that took place before January 25, 2017 – one year before he sought leave to amend to add Hininger and CoreCivic as defendants – are not time-barred because they relate back to the date of his original complaint under Federal Rule of Civil Procedure 15(c) and/or they are timely under the continuing violation doctrine.

24

2. Relation Back Under Rule 15(c)

Hininger and Neau argue that the claims asserted in the Amended Complaint do not relate

back to the original complaint under Federal Rule of Civil Procedure 15(c). Rule 15(c)(1) provides

that an amendment relates back to the date of the original pleadings when:

> (A) the law that provides the applicable statute of limitations allows relations back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).

The Magistrate Judge found that Hininger did not show the absence of a genuine issue of

material fact that Plaintiff's claim relates back to the date of the original complaint. The Magistrate

Judge considered that Plaintiff originally identified Corizon as a defendant and misidentified the

alleged policy as a Corizon policy. (Doc. No. 296 at 36 (citing Doc. No. 3, PageID#52)). Likewise,

Plaintiff mistakenly stated that Corizon was responsible for the approval and denial of his

medications. Plaintiff proceeded with the case under these mistaken beliefs until he learned

through discovery that the policy was not attributable to Corizon, but to CoreCivic, and the

approval and disapproval were not attributable to Corizon, but to Neau. (*Id*. at 36 (citing Doc. No.

92 at PageID# 940, 941, 943; Doc. No. 118 at PageID# 1213)). Plaintiff thereafter moved to amend

his complaint to name CoreCivic, Hininger, and Neau as defendants instead of Corizon. (Doc. Nos. 122, 122-1).

The Magistrate Judge found that this is precisely the circumstance described in *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 549 (2010), in which the Supreme Court found that a "mistake concerning the proper party's identity" extends to a misunderstanding of the roles of the parties in the "conduct, transaction, or occurrence" giving rise to the claim. Under these circumstances, the Supreme Court explained, "the only question under Rule 15(c)(1)(C)(ii), then, is whether party knew or should have known that, absent some mistake, the action would have been brought against him." *Id*.

CoreCivic, Hininger, and Neau have not argued that they did not have notice of the action and would be prejudiced in defending against it. Nor do they claim they could not have known and did not know that the claim arising out delays and denials relating to the approval process for Plaintiff's medication would have been brought against them, rather than Corizon, but for Plaintiff's mistake. The Magistrate Judge, therefore, found that they have not shown the absence of a genuine issue of material fact that Plaintiff's claims relate back to his original complaint. (Doc. No. 296 at 38, 43).

In objections to the Report and Recommendation, Defendants cite *Marlowe v. Fisher Body*, 489 F.2d 1057, 1064 (6th Cir. 1973), for the proposition that "when a plaintiff did not make a 'mistake' in naming a wrong party but seeks to add a new party, such an amendment creates a new cause of action and there is no relation back to the original filing for purposes of limitations." The Court is unpersuaded that *Marlowe* governs. Not only has Rule 15 been amended several times since the *Marlowe* decision, the case also pre-dates the Supreme Court's opinion in *Krupski* by more than thirty-five years.

26

Defendants also relies upon *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318-19 (6th Cir. 2010). Though *Asher* is less aged than *Marlowe*, it still predates *Krupski*, if only by a few months. In any event, *Asher* has no bearing on whether the claims of a Plaintiff who has made a mistake concerning the proper party's identity will relate back to an earlier pleading that mistakenly named a different party. In *Asher*, the plaintiffs sought to amend the complaint to add thirty-three additional plaintiffs whose claims were otherwise barred by the statute of limitations. *Id*. at 316. The court held the claims by these new plaintiffs did not relate back to the original complaint filed by different plaintiffs where the new plaintiffs were neither substituted nor showed a mistake concerning identity. *Id*. at 319-20.

At no point do Defendants contend that the Magistrate Judge's application of *Krupski* was in error or contend that the provision of the rule allowing relation back were there has been a mistake concerning the proper party's identity is inapplicable. In light of the foregoing, Defendants have not shown an absence of dispute of material fact that Rucker's claims relate back to the original complaint.

### 3. Continuing Violation

"Under the continuing violation doctrine, the court can consider as timely all relevant violations 'including those that would otherwise be time[-]barred'." *Nat'l Parks Conservation Ass'n, Inc. v. Tenn. Valley Auth*., 480 F.3d 410, 416 (6th Cir. 2007) (quoting *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003), *cert. denied*, 540 U.S. 876 (2003)). The Sixth Circuit recognizes two categories of continuing violations: (1) "those alleging serial violations" and (2) "those identified with a longstanding and demonstrable policy of discrimination." *Norman v. Granson*, 2020 WL 3240900, at * 2 (6th Cir. Mar. 25, 2020) (quoting *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003)). "A continuing violation 'is occasioned by continual unlawful actions, not

continual ill effects from an original violation.'" *Bruce v. Correctional Med. Svcs*., 389 F. App'x 462, 466 (6th Cir. 2010). Although the continuing violation doctrine most frequently applies in the context of Title VII discrimination claims, the Sixth Circuit has held that the doctrine may extend into the Section 1983 context for violations "identified with a longstanding and demonstrable policy of discrimination." *Sharpe*, 319 F.3d at 266-67.

Unlike continuing violations, "discrete acts" are not actionable if time barred "even when they are related to acts alleged in timely filed charges." *Nat'l Parks Conservation Ass'n*., 480 F.3d at 416 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). Explaining the distinction between discrete and continuing acts, the Sixth Circuit has explained, "[a] continuing violation occurs over several incidents that are not themselves actionable; conversely discrete events that are easily identifiable and separately actionable do not constitute a continuing violation." *Norman*, 2020 WL 3240900, at *2 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-115 (2002)).

Defendants argue the continuing violation doctrine typically does not apply to Eighth Amendment claims because the denial of medical care represents discrete unlawful acts, each of which triggers the statute of limitations anew. (Doc. No. 274 at 14 and Doc. No. 299-1 at 24 (citing *Bruce v. Correctional Medical Servs., Inc*., 389 F. App'x 462 (6th Cir. 2010))). In *Bruce*, the court found the continuing violation theory inapplicable to plaintiffs claims that defendants denied necessary surgery for approximately five years. *Id*. at 463. However, although the continuing violation theory did not reach defendants' conduct outside the limitations period, claims related to discrete unlawful action within the limitations period were not barred. *Id*. at 467. Therefore, if Bruce had been denied surgery through discrete actions within the limitations period, claims

28

arising out of these denials would not be time-barred. *Id.* (noting that "passive inaction" would not suffice).

Here, Rucker alleges discrete instances of inadequate medical care to which the continuing violation theory is not applicable. However, as stated above and specifically identified by the Magistrate Judge, he has alleged numerous discrete acts within the limitations period. (*See* Doc. No. 296 at 33 (noting that CoreCivic's non-formulary prescription approval process was applied to Rucker several times after July 2016, including in February 2017, March 2017, July 2017, and January 2018)). Therefore, even if the allegations in the Amended Complaint do not relate back under Rule 15(c), which Defendants have not established, Plaintiff nevertheless has stated valid claims within the limitations period with regard to subsequent denials of appropriate medication.[3]

    4.  Tolling

The Magistrate Judge held that the statute of limitation did not bar Plaintiff's claims against Hininger because claims subject to the PLRA's administrative exhaustion requirement do not begin to run "until after the litigant exhausts his administrative remedies." (Doc. No. 296 at 33 (citing *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012), and *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000)). The Magistrate Judge concluded that a reasonable jury could find that Plaintiff's official capacity claim against Hininger accrued on March 23, 2018, the date his January 15, 2018 grievance became final. (*Id.*).

Defendants complain that the Magistrate Judge incorrectly stated that the statute of limitation does not begin to run until *after* the litigant exhausts his administrative remedies, when the law is that the statute of limitations is *tolled* while a litigant exhausts administrative remedies.

---

[3] The Court notes that even if claims arising out of conduct outside the limitations period are untimely, these earlier incidents are nevertheless relevant to show the existence of CoreCivic policy or custom.

(Doc. No. 299-1 at 23). Defendants are correct, but the wording error is inconsequential here where the tolling period is arguably only a matter of months (January 15, 2018 to March 23, 2018) and Defendants do not dispute that, even without considering tolling, claims that accrued after January 25, 2017, are timely.[4]

Does tolling alone save Plaintiff's claims arising out of conduct in 2016? Perhaps not. But to be entitled to summary judgment on these grounds, Defendants must show there are no disputes of material fact regarding the amount of time that should be tolled while Rucker was exhausting or attempting to exhaust his administrative remedies. *Surles*, 678 F.3d at 458. While conceding that the statute of limitations should be tolled while Plaintiff exhausts administrative remedies, Defendants have not pointed to evidence to show the absence of a genuine dispute of fact as to how much time should be tolled, particularly in light of Plaintiff's many grievances addressing issues with his medication. Moreover, as discussed above, Plaintiff has alleged a number of discrete actions within the limitations period and his claims against CoreCivic and Neau may relate back to the filing of the original complaint in October 2016 under Fed. R. Civ. P. 15(c). For all of these reasons, summary judgment on statute of limitations grounds is not appropriate.

## IV.    CONCLUSION

Having conducted a *de novo* review of the Magistrate Judge's determinations and the Defendants' objections, for the reasons stated herein, the Court concludes the Defendants objections with regard to the portion of the claim arising out of the prescription of Incruse Ellipta in April 2016 are well-taken, as are the objections to the recommendation regarding the application

---

[4]    Neau does not specifically address tolling at all. Her assertion that claims arising out of alleged incidents that occurred prior to January 25, 2017, are untimely, does not account for tolling of these claims while the grievance process played out. Application of tolling to the claims based on occurrences in January 2017, even those arising out of alleged incidents taking place before January 25, 2017, would almost certainly render those claims timely.

30

of the continuing violation doctrine and, to some extent, tolling. The remaining objections are overruled. Accordingly, the Report and Recommendation is **ADOPTED** and **APPROVED** with the modifications stated herein, and Defendants' Second Motion for Summary Judgment (Doc. No. 273) is **GRANTED** in part, and **DENIED** in part.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE